Plaintiff-appellant, Fred C. Buelow, appeals the decision of the Cuyahoga County Common Pleas Court granting defendant-appellee, Vocational Guidance Services' motion for summary judgment. For the reasons that follow, we affirm.
Appellee is a non-profit organization that rehabilitates, trains and employs physically and mentally disabled individuals. Appellant was hired by appellee in February 1977 as its chief financial officer. Appellant was employed in this capacity for the next twenty years, until he was terminated on February 3, 1997 by appellee's Chief Executive Officer, Richard Oestreich.
Throughout his employment with appellee, appellant was responsible for appellee's day-to-day financial operation, including paying bills, collecting monies, allocating funds among appellee's various programs and departments, and preparing monthly financial statements. In addition to his financial duties, appellant was also responsible for the administration of appellee's physical facility, including the security and maintenance of the building. Beginning in 1987, appellant was responsible for managing appellee's WINGS operation, a "make-work" program for disabled individuals involving the manufacture of magnets and key chains.
As appellee's chief financial officer, appellant was responsible for preparing appellee's annual budget. The budgeting process began in October of each year, when the managers of each division submitted a budget for the upcoming year for his or her particular program. Appellant would then prepare a balanced budget for the entire organization.
In December, the balanced budget for the coming year was presented to the finance committee of appellee's Board of Trustees for its approval. In January, the budget was presented to the entire Board for its approval. After the budget was adopted, appellant utilized monthly financial statements to assess appellee's financial condition throughout the years. The Board was kept informed of appellee's financial condition through periodic overall organizational income statements prepared by appellant.
On November 14, 1996, the Board of Trustees held a regularly scheduled meeting. At that meeting, the Board was given a routine financial statement that reflected appellee's activities from January 1996 through October 1996. As of November 1, 1996, income was $12,018,501 and expenses were $12,477,099, meaning that the ten-month activity showed a deficit of $558,598; an $81,598 difference between the projected $477,000 deficit which appellee had expected as of November 1, 1996 and the actual deficit.
Appellant claims that in November and December 1996, appellee's chief executive officer and his direct supervisor, Richard Oestreich, directed him to sell securities in appellee's endowment fund and to reflect the income generated from the sale as operational income so that appellee could cover its deficit and break even for the year. In addition, appellant claims, Oestreich directed him to borrow $1.2 million to repurchase the securities that he had just sold. Thus, appellee would be replacing $1.2 million of equity with $1.2 million of debt. Appellant did as he was instructed, but told Oestreich that he should inform the Board of the sale of the securities and subsequent loan. According to appellant, Oestreich replied that he would "take care of the Board" and instructed appellant not to talk to the Board about appellee's financial situation.
Appellant presented the 1996 financial statements to the Board of Trustees at its December 17, 1996 meeting. When one of the board members inquired about the source of the non-funded income listed on the budget, appellant informed the Board that the funds derived from the sale of securities were in the endowment fund. No one asked a follow-up question, however, and the matter was dropped.
According to appellant, as the final budgets from the managers of the different divisions were reported to him, it became obvious that the actual income from 1996 was much lower than the projected income for 1996. In addition, the projected income from charitable contributions was not meeting projections. Accordingly, by the end of December 1996, appellee had an operating deficit of $1.4 million.
In light of the large operating deficit, appellant decided that the Board had to be informed of appellee's financial situation. Accordingly, on January 23, 1997, appellant arranged for himself and Alan Goldstine, a member of the Board and chairman of the finance committee, to drive together to a regularly scheduled Board meeting in Elyria, Ohio. During the drive, appellant informed Goldstine about the $1.4 million deficit. He also told Goldstine that he believed he would be fired for talking to Goldstine about appellee's finances because Oestreich had told him several times not to talk to the Board about appellee's financial situation. Following this conversation, Goldstine told appellant that he was leaving town on a previously scheduled trip, but that they could talk further about appellee's finances after he returned.
On January 28, 1997, prior to a meeting with Oestreich, appellant and other division managers, appellant again told Oestreich that he, Oestreich, needed to tell the Board about appellee's financial situation. According to appellant, Oestreich again told him that he was not to talk to the Board about appellee's financial situation.
Nevertheless, the next day, appellant arranged a meeting with himself, a National City Bank loan officer, a representative of Samuel, Kellogg Co., Inc., appellee's independent auditor, and Goldstine. During this meeting, appellant described in detail the nature of the misrepresentation on the 1996 financial statements regarding the booking of the income from the sale of securities in the endowment fund as operational income and the true operating deficit of appellee. During this meeting, Goldstine told appellant to send him detailed financial statements regarding appellee's financial status. Appellant provided the statements to Goldstine on January 30, 1997.
Appellant did not inform Oestreich about the January 29, 1997 meeting with Goldstine. Oestreich found out about the meeting later that day, however, when he visited Goldstine's office for a prearranged meeting and Goldstine informed him that appellant had just left his office. According to Oestreich, he had arranged the meeting with Goldstine to inform Goldstine of his desire to terminate appellant's employment with appellee.
On February 3, 1997, Oestreich fired appellant. According to Oestreich, he terminated appellant's employment because of his inability to control appellee's finances and provide trustworthy financial data to Oestreich and because he had not told Oestreich that he was going to be meeting with Goldstine and representatives from National City Bank and Samuel, Kellogg 
Co., Inc.
On July 8, 1997, appellant filed a two-count complaint against appellee alleging that: 1) appellee had terminated him in violation of Ohio's Whistleblower Statute, R.C. 4113.52, because he communicated appellee's financial condition to Goldstine; and 2) his termination was in violation of the public policy of the State of Ohio, which imposes a fiduciary duty of good faith and loyalty on corporate officers. On September 8, 1997, appellee answered the complaint and filed a counterclaim against appellant for accountancy malpractice, which was subsequently dismissed without prejudice.
On April 17, 1998, after the parties had exchanged written discovery and taken the depositions of appellant, Oestreich and Goldstine, appellee filed its motion for summary judgment. Appellant filed his brief in opposition on May 28, 1998. On July 8, 1998, the trial court issued an opinion and order granting appellee's motion for summary judgment.
Appellant timely appealed, assigning two assignments of error for our review:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S TORT OF WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM ("GREELEY" CLAIM) ON THE GROUNDS THAT THE BODY OF LAW IMPOSING A FIDUCIARY DUTY OF GOOD FAITH AND LOYALTY ON CORPORATE OFFICERS DOES NOT CONSTITUTE SUFFICIENTLY CLEAR PUBLIC POLICY TO WARRANT AN EXCEPTION TO THE EMPLOYMENT-AT-WILL DOCTRINE. (OPINION, AT P. 5-6).
 II. THE TRIAL COURT ERRED IN DETERMINING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED AS TO PLAINTIFF'S CLAIM THAT DEFENDANT TERMINATED HIM IN VIOLATION OF O.R.C. § 4113.52 (OPINION, AT P. 2-5).
We review the trial court's granting of summary judgment de novo in accordance with the standards set forth in Rule 56(C) of the Ohio Rules of Civil Procedure. North Coast Cable v. Hanneman
(1994), 98 Ohio App.3d 434, 440. To obtain a summary judgment under Civ.R. 56(C), the moving party must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997),77 Ohio St.3d 421, 430. If the moving party discharges its initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also, Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. Summary judgment is appropriate if, after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to that party. State ex rel. The V Cos. v. Marshall (1988), 81 Ohio St.3d 467,473; Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327.
In his first assignment of error, appellant contends that the trial court erred in granting appellee's motion for summary judgment on his claim that he was terminated in violation of the public policy of the State of Ohio.
In Greeley v. Miami Valley Maintenance Contractors, Inc.
(1990), 49 Ohio St.3d 228, syllabus, the Ohio Supreme Court held that an employer may not discharge an employee "for a reason which is prohibited by statute." Since Greeley, the Court has expanded the scope of the law by stating that an employee may bring a Greeley claim for violations of public policy as expressed in the Ohio and United States Constitutions, administrative rules and the common law. Painter v. Graley
(1994), 70 Ohio St.3d 377, syllabus. More recently, in Kulch v.Structural Fibers, Inc. (1997), 78 Ohio St.3d 134, 150-151, the Court held that an employee can maintain a wrongful discharge in violation of public policy claim, separate and apart from the public policy embodied in R.C. 4113.52, if the four elements of the tort are established:
 1. A clear public policy exists and is manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element);
 2. dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element);
 3. plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and
 4. the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).
The clarity and jeopardy elements of the tort of wrongful discharge are questions of law to be determined by the court; the causation and overriding justification elements are questions of fact for the trier-of-fact. Id. at 161.
Appellant argues that under Ohio law, there is a public policy imposing a fiduciary duty of good faith and loyalty upon a corporate officer of a non-profit organization. He argues further that his actions in reporting the misrepresentation regarding the booking of the income from the sale of securities from the endowment fund and the true operating deficit to Goldstine, despite Oestreich's explicit instructions not to inform the Board of appellee's financial situation, stemmed from his awareness of his fiduciary duty to appellee. Therefore, appellant argues, he was terminated because he fulfilled his fiduciary obligations and in violation of the public policy of the State of Ohio.
Appellant does not cite any cases from Ohio or, indeed, from any other jurisdiction, that stand for the proposition that a public policy claim for wrongful discharge can be based upon a corporate officer's exercise of his or her general fiduciary duty. Appellant urges this Court, however, to create a judicially recognized exception to the employment-at-will doctrine premised upon the fiduciary duties owed by a corporate officer to the organization.[1]
On the facts of this case, we decline to recognize an exception to the employment-at-will doctrine premised upon a corporate officer's exercise of his or her fiduciary duty. With respect to the clarity element of the tort of wrongful discharge, we agree with appellant that there is a public policy in Ohio that imposes a fiduciary duty upon a corporate officer of a nonprofit corporation. This duty of good faith and loyalty owed by a corporate officer to a nonprofit corporation arises from both the common law and the Ohio Revised Code. See Celebrezze v. VarietyClub Tent No. 6 Charities (Oct. 28, 1992), Lorain App. No. 92CA005279, unreported; R.C. 1702.30. Accordingly, appellant's claim meets the clarity element of the tort of wrongful discharge.
We do not agree, however, that dismissing employees under circumstances like those involved in this case would jeopardize the public policy (the jeopardy element). Appellant contends that allowing employers to terminate employees for exercising their fiduciary duties would "chill" the exercise of those duties and therefore jeopardize the public policy imposing fiduciary duties upon corporate officers. We are not convinced, however, that appellant's awareness of his fiduciary duty precipitated his meeting with Goldstine. Appellant testified that he had sold securities from the endowment fund in the past in order to generate operating income (admittedly in smaller quantities) and the action had been approved by appellee's independent auditor. There is no evidence in the record to support appellant's claim that he suddenly had a fiduciary duty to report to the Board actions similar to those taken in the past and approved by the independent auditors. Moreover, appellant admitted that the financial statements presented to the Board accurately reflected appellee's financial situation. On these facts, therefore, we decline to find an exception to the employment-at-will doctrine based upon a corporate officer's fiduciary duty to his or her organization.
Accordingly, the trial court did not err in granting appellee's motion for summary judgment on appellant's claim that he was terminated in violation of public policy. Appellant's first assignment of error is overruled.
Although at oral argument appellant appeared to withdraw his second assignment of error, we address the argument set forth in appellant's brief that the trial court erred in granting appellee's motion for summary judgment on appellant's whistleblower claim.
R.C. 4113.52, Ohio's Whistleblower Statute, provides:
 (A)(a)(a) If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulations of a political subdivision that the employee's employer has authority to correct and if the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and shall subsequently file with that supervisor or officer a written report that provides sufficient detail to identify and describe that violation. * * *
* * *
 (3) If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and if the employee reasonably believes that the violation either is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety or is a felony, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.
 (B) Except as otherwise provided in division (C) of this section, no employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(1) or (2) of this section or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under either of those divisions. * * *
The Ohio Supreme Court has determined that in order for an employee to be afforded protection as a "whistleblower," the employee must strictly comply with the dictates of R.C. 4113.52.Contreras v. Ferro Corp. (1995), 73 Ohio St.3d 244, syllabus. Failure to do so prevents the employee from claiming the protections embodied in the statute. Id.
Pursuant to the Whistleblower Statute, an employee seeking statutory protection as a whistleblower must show that there has been a violation of a company work rule or policy, or a violation of a state or federal statute, ordinance or regulation which the employee reasonably believes is either: 1) a criminal offense that is likely to cause an imminent risk of physical harm to persons; 2) a hazard to public health or safety; or 3) a felony. R.C. 4113.52(A)(1)(a) and (A)(3); Billey v. City of Lakewood
(Dec. 11, 1997), Cuyahoga App. No. 71794, unreported.
Appellant does not contend that Oestreich's conduct was a criminal offense that posed an imminent risk of physical harm to persons or a hazard to public health or safety. Rather, appellant contends that he reasonably believed that Oestreich's alleged refusal to apprise the Board of appellee's financial situation was a felony under R.C. 2913.42, which prohibits anyone, without privilege to do so, from, inter alia, falsifying, concealing, or altering any writing, data or record with the knowledge that he is facilitating a fraud. When such conduct results in a loss to the victim of one hundred dollars or more, the conduct constitutes a felony. R.C. 2913.42(A) and (C)(3)(c).
Regardless of whether Oestreich's actions constituted a felony, however, appellant's deposition testimony demonstrates that appellant did not believe a felony had occurred:
 Q. Was it your position that there was anything that was illegal or in violation of some law in connection with the way the `97 budget was put together, or was it your position that it was simply an imprudent budget based on incomplete information being given to the board?
 A. * * * [N]o, I didn't feel anything after that was unlawful. I just thought it was really bad, bad business. But I didn't think at that — after that that anything was unlawful.
Moreover, appellant admitted that the financial statements presented to the Board in 1996 were of the "same exact" type that he had prepared for twenty years and that they accurately reflected appellee's financial condition. Appellant also admitted that Oestreich's presentations to the Board were correct, although in his opinion they were incomplete and misleading. At most, therefore, there was a difference of opinion regarding how much or how little to tell the Board about appellee's financial situation. There is no evidence, however, that appellant believed a felony had occurred. Accordingly, appellant cannot establish a whistleblower claim under R.C. 4113.52.
Appellant argues, however, that even if we conclude that he did not have a reasonable belief that Oestreich's conduct constituted a felony, R.C. 4113.52(B) protects employees who either make a report or an inquiry or take any other action to ensure the accuracy of any information reported pursuant to the statute from any retaliatory action by the employer. Accordingly, appellant contends, there is a genuine issue of material fact regarding whether he was terminated for speaking to Goldstine and subsequently supplying him with financial statements and a cash-flow analysis regarding appellee's financial situation. Appellant's argument is not well-taken.
As already discussed, R.C. 4113.52 protects employees who make reports or inquiries based upon a reasonable belief that the employer or a fellow employee is violating a company work rule or policy, or a state or federal statute, ordinance or regulation which the employee reasonably believes is either a criminal offense that is likely to cause an imminent risk of physical harm to persons, a hazard to public health or safety, or a felony. Having determined that appellant's report to Goldstine was not motivated by any of the factors enunciated in the statute, appellant is not entitled to the protections of R.C. 4113.52(B).
Accordingly, we conclude that although appellant was well-intentioned and perhaps badly treated by appellee, viewing the evidence in a light most favorable to appellant, reasonable minds can come to but one conclusion — that the evidence was not sufficient to prove all of the essential elements of a whistleblower claim. The trial court did not err, therefore, in granting appellee's motion for summary judgment on appellant's whistleblower claim.
Appellant's second assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and PATRICIA A. BLACKMON, J.,CONCUR.
 _________________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE
[1] "[I] t is the responsibility of the Ohio judiciary to determine whether sufficiently clear public policy reasons exist to support a common-law exception to the doctrine of employment-at-will and to set the parameters of those exceptions." Kulch, 78 Ohio St.3d at 161.